UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:07-CV-207-M

RODNEY GRAVES                                                         PLAINTIFF

V.

AMBER BOWLES; ELIZABETH CAPPS;
U.S. BANK, N.A.; OFFICER JASON RICHARDSON,
in his individual and official capacity;
CAPTAIN JAMES DUFF, in his individual and official
capacity; CAPTAIN DAVID GRAVES, in his individual
and official capacity; SGT. JASON MORGAN,
in his individual and official capacity;
OFFICER JIMMY PEDIGO, in his individual
and official capacity; DETECTIVE EDDIE LINDSEY,
in his individual and official capacity,
CITY OF GLASGOW, KENTUCKY;
TPR. THOMAS PYZIK, in his individual capacity;
TPR. WILLIAM SHUFFETT, II, in his individual capacity;
TPR. MICHAEL McILRATH, in his individual capacity;
TPR. DEWAN KELLY, in his individual capacity;
TPR. JOHN NOKES, in his individual capacity;
TPR. JEREMY SLINKER, in his individual capacity;
TPR. NORMAN PRESTON, in his individual capacity;
TPR. CHAD PEERCY, in his individual capacity;
TPR. BRUCE BUTTON, in his individual capacity;
TPR. CHAD CARROLL, in his individual capacity; AND
TPR. ANTHONY FANNIN, in his individual capacity           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the Plaintiff, Rodney Graves, to reconsider [DN 56] the grant of summary judgment to Defendants. Fully briefed, the motion is ripe for decision.

## I. INTRODUCTION

On August 10, 2007, the Glasgow, Kentucky branch of U.S. Bank was robbed at gunpoint. Rodney Graves was identified as a suspect, arrested pursuant to a warrant, and released a few days later when it became clear to law enforcement officials that he was the wrong man. Graves brought suit on various theories of liability against the bank tellers (and their employer) who picked him out of a police lineup; he also brought suit against the state and local police officers and agencies for the alleged use of excessive force in effecting his arrest. On February 5, 2010, this Court entered a Memorandum Opinion and Order granting summary judgment on all claims for the Defendants. Graves now seeks relief from the judgment, arguing that the Court "misapplied the appropriate summary judgment standard and overlooked several essential facts." (Pla. Mot. for Recon., p. 3).

## II. STANDARD

A motion to alter or amend judgment may be "made for one of three reasons: (1) [a]n intervening change of controlling law; (2) [e]vidence not previously available has become available; or (3) [i]t is necessary to correct a clear error of law or prevent manifest injustice." United States v. Jarnigan, 2008 WL 5248172, *2 (E.D. Tenn. Dec. 17, 2008)(citing Fed. R. Civ. P. 59(e); Helton v. ACS Group, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)); see also GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). Rule 59(e) is not intended to be used to "'relitigate issues previously considered' or to 'submit evidence which in the exercise of reasonable diligence, could have been submitted before.'" United States v. Abernathy, 2009 WL 55011, *1 (E.D. Mich. Jan. 7, 2009) (citation omitted). See

also <u>Electric Ins. Co. v. Freudenberg-Nok, General Partnership</u>, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007)("Such motions are not an opportunity for the losing party to offer additional arguments in support of its position."); <u>Browning v. Pennerton</u>, 2008 WL 4791491, *1 (E.D. Ky. October 24, 2008)("[A] motion for reconsideration is not a vehicle to re-hash old arguments . . . ."). Motions to alter or amend a judgment pursuant to Rule 59(e) "are extraordinary and sparingly granted." <u>Marshall v. Johnson</u>, 2007 WL 1175046, *2 (W.D. Ky. April 19, 2007).

### III. DISCUSSION

In this case, Graves argues that the Court's judgment should be altered or amended because it is necessary to correct a clear error of law. As he sees it, the Court misapplied the standard for summary judgment because it "'cherry picked' a few isolated facts that indicated that Rodney Graves could be the bank robber," "purposefully overlooked a world of exculpatory facts," and ultimately acted as a "super juror" in determining that "there ha[d] been no showing of a 'constitutional violation.'" (Pla. Mot. for Recon., pp. 3-4). Graves details the so-called "wealth of facts . . . that clearly indicate that a jury question is presented." <u>Id.</u> at 5-7 (citing 48 facts he says the Court should have considered in the light most favorable to the plaintiff and which therefore would have precluded summary judgment). And he then goes on to criticize the Court for reducing "the entire substance of [his] case . . . to a one sentence summary in a footnote located at Page 13" in which it was stated that Plaintiff "ably highlights the numerous shortcomings of the Glasgow police investigation." <u>Id.</u> at 5. "Other than this passing and general reference," Graves says, "one

3

would never know that the investigation in this matter was deficient at all." Id.

All of the facts cited by Plaintiff – save three that are discussed individually below – relate to these "shortcomings." The idea is that the failings of the Glasgow Police investigation show that they lacked probable cause to make Plaintiff's arrest. Indeed, Graves asserts at the beginning of his motion to reconsider that his "primary claims are against the Defendants associated with the City of Glasgow Police Department . . . . [and those] claims center on the lack of probable cause, the false allegations against the Plaintiff, and the ultimate arrest of Plaintiff . . ." (Pla. Mot. for Recon., p. 2). Graves then cites at least eight Sixth Circuit decisions stating the rule that the "existence of probable cause is a question of fact" and argues that this "case is worthy of a jury's consideration" for that very reason. Id. at 5, 8 (quoting Everson v. Leis, 556 F.3d 484 (6th Cir. 2009)); see also id. at 10 (quoting Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000) (explaining that an officer "must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest")). And he concludes by saying that "[w]hen the jury hears the details . . . [it] could reasonably conclude that there was a lack of probable cause and an inappropriate, unconstitutional and compensable conduct." (Pla. Mot. for Recon., p. 13).

There is just one problem. Plaintiff never stated a claim against the police defendants for "lack of probable cause." In Count Six of his complaint he states a claim for excessive force. In Count Seven he asserts that there is municipal liability for the use of excessive force based on a failure to train or supervise and failure to follow department policies. And

4

in Count Eight Graves states a claim against all Defendants for violation of his constitutional right to due process under a "stigma plus" theory. None of these allegations put the police defendants on notice that Plaintiff was stating a § 1983 claim against them for "lack of probable cause," let alone that that claim was the "primary claim" against them as Plaintiff now avers in his motion to reconsider. (Pla. Mot. for Recon., p. 2). The Glasgow Police Defendants point this out in their response, saying that "[i]n support of the present motion, Plaintiff argues for the first time that the GPD lacked probable cause i[n] obtaining the arrest warrant" and that "Plaintiff's motion should be denied on this basis alone."[1] (Glasgow Response, pp. 3-4). The Court agrees.

A motion to reconsider is not a proper vehicle for raising new arguments or stating new claims and, complaint aside, Plaintiff never even argued that he was stating a Fourth Amendment violation pursuant to § 1983 against any of the police defendants for arresting him without probable cause. On the contrary, his "combined response" to the police defendants' motions for summary judgment affirms that the claims against those defendants are the claims (just recited above) that are clearly listed against them in his complaint. Plaintiff says, under the heading "causes of action," that "[w]ithin his civil complaint, Rodney Graves asserts causes of action against the law enforcement agencies and City of Glasgow, claiming excessive force was utilized in order to take him into custody. [Count Six] Graves also claims that these law enforcement agencies fail[ed] to either properly train or

---

[1] Plaintiff fails to respond to this argument in his reply.

supervise the individuals who are involved in the investigation and the arrest of Graves, and that these agencies violated the applicable standards and procedures of their respective departments. [Count Seven] Finally, from the violations and circumstances that flowed from his arrest and detention, Graves' reputation was damaged, and he was caused to suffer extreme humiliation from the publicity that flowed from his arrest. [Count Eight]" (Pla. Resp. to Mo. S.J., p. 22). That is all he lists.

As such, there was no need for the Court to discuss, e.g., whether Detective Lindsey "contact[ed] any of the several people who were with the Plaintiff at St. Thomas Hospital in Nashville at the time of the Glasgow bank robbery," whether it "would have been fundamental police work to have investigated the other three suspects identified as the bank robber," or whether "Chief Ford could have easily found out from Rodney's employer where he was on any given day." (Pla. Mot. for Recon., pp. 5, 7, 8). Those facts and the others like them enumerated by Plaintiff in his motion to reconsider simply had no bearing on the legal questions before the Court. At best, they would have been relevant to Graves' assertion that there was a failure to train or supervise by the Glasgow Police Department. But since the Court found that Plaintiff's excessive force claim failed as a matter of law, that sort of evidence was irrelevant because the issue of municipal liability was mooted. [DN 54, p. 17]. Accordingly, the Court must deny Plaintiff's request to alter or amend the judgment on the theory that his claim against the police defendants for lack of probable cause to arrest should have gone to the jury.

There is only one fact cited by Plaintiff in his motion to reconsider that relates to his

claim of excessive force: "Chief Ford was extremely displeased that the GDP/KSP risked the lives of the Tompkinsville police officers and civilians when they had only to ask him to call Rodney into the police station." (Pla. Mot. for Recon., p. 9; Reply, p. 8). Plaintiff argues that this fact matters because "if a jury were to hear the testimony of Chief Ford, the jury would know that '. . . Rodney could have been arrested or taken into custody, whatever, without incident.'" Id. at 12 (quoting Ford depo., p. 25). The Court finds this argument unpersuasive. Because "the question is whether the officers' actions are 'objectively reasonable' in light of the *facts and circumstances confronting them*," Chief Ford's opinion that all the Glasgow or Kentucky State Police had to do was contact him and Graves "could have been arrested . . . without incident" is no evidence that the Defendants used excessive force since Ford does not say that he communicated his opinion to the Defendants. Graham v. Connor, 490 U.S. 386, 397 (1989) (emphasis added). On the contrary, Ford expressly faults the Glasgow Police for not seeking out his advice on such matters prior to Graves' arrest: "I think that who[ever] was the leading investigator of that didn't get all his ducks in a row before he made the call [to the KSP] . . . . [a]nd he certainly didn't by . . . by not calling my department and talking to anybody over there to know that Rodney Graves is not a dangerous person."[2] (Ford depo., p. 43).

The other two non-probable-cause-related facts identified by Plaintiff in his motion

---

[2] To the extent this assessment by Chief Ford might have been relevant through the deposition questioning of Captain Graves, the Court considered and rejected it for the reasons detailed on page sixteen of its Opinion, and Plaintiff does not now argue or explain how that determination constitutes a clear error of law.

to reconsider are that Amber Bowles "picked No. 1 in the photo lineup because that face was round and some of the others were not" and that Elizabeth Capps "was told by Det. Lindsey to pick the photo she thought resembled the bank robber, and she picked No. 1 based on facial shape and facial hair." (Pla. Mot. for Recon., p. 9; Reply, p. 8). Contrary to Plaintiff's contention, however, the Court did not overlook these facts. On page three of its Opinion, the Court noted that Ms. Capps "picked [Graves out of the lineup]. . . based on [his] face shape, facial hair similarities and the fact there was no doubt in my mind it was him"; that Ms. Bowles also picked Graves out of the lineup because of his "face shape and eyes," saying "[h]e is the guy who came in Friday and robbed the bank"; and that "both women admitted that there were physical differences between the individual in the photograph and the robber, such as length of hair, [but] they were both certain that they had identified the robber." [DN 54, citing DN 29, Exhibits 5-6]. Plaintiff may disagree with the Court's conclusion that the differences recognized by Bowles and Capps between the lineup photo and the bank robber "did not support a reasonable inference that the bank tellers abused their qualified privilege," but that is an issue for appeal, not reconsideration.

## IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for reconsideration is **DENIED**.

cc. Counsel of Record